# In the United States Court of Federal Claims

No. 19-1453C
(Filed under seal June 18, 2025)
(Reissued June 27, 2025)†

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
                                 *
STARSIDE SECURITY &              *
INVESTIGATION, INC.,             *
                                 *
                                 *
           Plaintiff,            *
                                 *
   v.                            *
                                 *
THE UNITED STATES,               *
                                 *
           Defendant.            *
                                 *
                                 *
* * * * * * * * * * * * * * * * *
```

*H. Todd Whay*, Baker, Cronogue, Tolle & Werfel, LLP, of McLean, Va., for plaintiff.

*Michael D. Snyder* and *Erin K. Murdock-Park*, Trial Attorneys, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Senior Judge.

This post-award bid protest concerned the application of the automatic stay of contract performance under the Competition in Contracting Act (CICA), 31 U.S.C. § 3553(d)(3)(A)–(d)(4). Plaintiff Starside Security & Investigation, Inc. (Starside) requested the CICA stay when it filed with the Government Accountability Office (GAO) a protest of a contract awarded by the General Services Administration (GSA). Because the GAO protest was filed more than ten days after the contract award date, the GSA refused to stay contract performance.

---

† As neither party has requested redactions, this opinion, originally filed under seal, is now reissued for publication with one minor, non-substantive correction.

Within a few days of learning that the CICA stay had not been implemented by the GSA, Starside filed its protest with our court, contending that the decision not to stay performance was arbitrary and unlawful, and that the ten-day period was equitably tolled. After a hearing on Starside's motion for injunctive and declaratory relief, the Court orally ruled that the ten-day deadline for triggering the CICA stay was subject to equitable tolling under *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), and that the circumstances warranted tolling. Consequently, Starside was entitled to an automatic stay of the award. Plaintiff's motion was **GRANTED-IN-PART** and **DENIED-IN-PART**, as a declaratory judgment was sufficient to impose the automatic stay, mooting the requested injunctive relief. *See* ECF Nos. 22 & 23. Because this case presented a novel legal question concerning the application of *Irwin* and its progeny, this opinion is issued to provide a written explanation of the ruling.

## I. BACKGROUND

As this matter turns on the applicability of the equitable tolling doctrine, few of the details regarding the contract at issue need concern us. Using call orders issued for multiple-vendor blanket purchase agreements (BPAs), GSA was procuring guard and transportation services for the U.S. Marshals Service. *See* Compl., ECF No. 1, ¶¶ 8, 12–13, 22; Ex. 1 to Mem. P. & A. Supp. Pl.'s Appl. TRO, Mot. Prelim. Inj., & Declaratory Relief (Pl.'s Mem.), ECF No. 6 at 23–50 (San Diego call order); Ex. 2 to Pl.'s Mem., ECF No. 6 at 52–119 (task order for BPAs). Over the course of four weeks, Starside bid on five call orders through the GSA's online ordering system, IT-Solutions Shop (ITSS). *See* Compl. ¶¶ 17, 20, 22.

The first of these call orders was for services to be performed in San Diego, for which Starside was the incumbent contractor. *See* Decl. of Yvonne Coventry (1st Coventry Decl.), Ex. 1 to Compl., ¶ 10; Compl. ¶¶ 14, 20; Decl. of Kenneth W. Miller III (Miller Decl.), Attach. A to Def.'s Resp. to Pl.'s Appl. (Def.'s Resp.), ECF No. 16 at 39, ¶ 27. Starside submitted its quote in late July. *See* Compl. ¶ 20; Miller Decl. ¶ 9. On August 19, its officers telephoned Latasha Goines, the contracting officer (CO) identified in the call order, *see* Ex. 1 to Pl.'s Mem. at 23, to ask if she needed a clarification and inquire whether evaluations were ongoing---as Starside had not yet received an award notice, 1st Coventry Decl. ¶ 23. As plaintiff's president reports, and defendant has not disputed, Ms. Goines told Starside that it would receive notice of any award. 1st Coventry Decl. ¶ 23.

Unbeknownst to Starside, however, Kenneth W. Miller had replaced Ms. Goines as CO for that call order after the request for quotes had issued, and he had already awarded the contract to ISS Action, Inc. on August 15. *See* Miller Decl. ¶¶ 6, 9, 15–16. The CO used the ITSS system to notify the awardee on August 15. *Id.* ¶ 16. That system typically notifies unsuccessful offerors by generating an email sent to the GSA project manager with blind carbon copies to those other offerors. *See* Decl. of Mark Pombert (Pombert Decl.), ECF No. 19, ¶¶ 3–5 & Ex. 1 (notice for

San Diego award); Ex. 1 to Pl.'s Reply to Def.'s Resp. (Pl.'s Reply), ECF No. 18 at 22–24 (notices for three other awards).  Although Starside received numerous emails on August 15 with no apparent difficulty, *see* Decl. of Yvonne Coventry (3rd Coventry Decl.), ECF No. 20 at 4, including the notice of award for another call order, *see* Ex. 1 to Pl.'s Reply, ECF No. 18 at 23, it seemingly did not receive notification of the San Diego award, as is evident from the call to Ms. Goines.  Because the ITSS system uses a "bcc" to transmit notice, the government could not produce a copy of the notice addressed to plaintiff, *see* Pombert Decl. ¶ 5, nor has it provided an email read receipt or any server data demonstrating that the notice to Starside was actually sent.

Also on August 15, Mr. Miller unsuccessfully attempted to upload information about the contract award into the Federal Procurement Data System (FPDS), which would have been available to the general public.  Miller Decl. ¶ 19.  Because of technical difficulties, Mr. Miller was unable to upload this information for public consumption until August 26, eleven days after contract award.  *Id.* ¶ 20.  The resulting record indicated a "date signed" of August 15 but an effective date of September 1.  *Id.* ¶ 21; *see also* Attach. 6 to *id.*, ECF No. 16 at 68.

After Starside had received notification through the ITSS system of awards made for the four later-issued call orders, *see* Compl. ¶ 20, but not for the San Diego one, its president on September 3 searched the internet for information on the San Diego procurement, 1st Coventry Decl. ¶ 24–25.  Although the GSA website stated that the San Diego call order was still under evaluation, 1st Coventry Decl. ¶ 24 & Attach. 1, the FPDS indicated an award had been made, *id.* ¶ 25.  This conflicting information prompted Starside's president to send an email that same day to Ms. Goines asking if an award had been made.  *Id.* ¶ 26.  Two days later, Mr. Miller confirmed that an award had been made, emailing a letter to Starside containing a brief explanation of the award.  Miller Decl. ¶ 23; 1st Coventry Decl. ¶ 27.  Four days later, on September 9, Starside filed its GAO protest, requesting the CICA automatic stay of contract performance.  Compl. ¶¶ 32–33; 1st Coventry Decl. ¶ 28; Miller Decl. ¶ 24. That same day, Mr. Miller was notified of the protest and first learned "that Starside had apparently not received a notification of non-award from ITSS."  Miller Decl. ¶ 25.

The CO did not, however, order a stay of contract performance under CICA, 31 U.S.C. § 3553(d)(3)(A), because the GAO protest was filed more than ten days after the contract had been awarded.  1st Coventry Decl. ¶ 29; *see also* Def's Resp. at 9–10.  Starside's counsel was informed of this on September 17, 1st Coventry Decl. ¶ 29, and plaintiff filed its protest in our court three days later, *see* Compl.  Starside maintains that the government acted arbitrarily, capriciously, and contrary to law in not providing timely notice of the contract award, Compl. ¶¶ 42–46; in not tolling the ten-day period to qualify for the automatic stay because of the failure to provide award notice, *id*. ¶¶ 48–54; and in not voluntarily staying performance under the obligation to act "with integrity, fairness, and openness," *id.*

¶¶ 56–61 (citing 48 C.F.R. § 1.102(b)(3)).  Starside requested declaratory and injunctive relief, *see* Compl. at 13, and filed its motion and supporting memorandum concurrently with the complaint, *see* Pl.'s Appl. TRO, Mot. Prelim. Inj., & Declaratory Relief, ECF No. 5; Pl.'s Mem., ECF No. 6.  Following an expedited briefing schedule, *see* Order, ECF No. 13, the matter was argued one week later, and the Court orally ruled at the conclusion of the hearing that Starside's GAO protest was filed within ten days of contract award due to the application of equitable tolling, and thus plaintiff was entitled to the automatic stay of contract performance.  *See* Order, ECF No. 22.

## II.  DISCUSSION

### A.  Legal Standard

#### *1.  Bid Protest Jurisdiction*

Bid protests are heard by this court under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a)–(b), 110 Stat. 3870, 3874 (1996).  The relevant provision states that our court "shall have jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2018).  Under this provision, "[a] non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction."  *Distrib. Sols., Inc. v. United States*, 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008).  Challenges to alleged violations of the CICA automatic stay provision are within this jurisdiction.  *RAMCOR Servs. Grp. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999).

The Federal Circuit has construed the ADRA term "interested party" to have the same definition as under CICA, encompassing "actual or prospective bidder[s] or offeror[s] whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  *Am. Fed'n of Gov't Empls. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2)).  As Starside was an actual bidder, this Court has jurisdiction to hear its challenge under CICA.

#### *2.  Standard of Review*

The United States Court of Federal Claims is required by the ADRA amendments to the Tucker Act to review an agency's compliance with 31 U.S.C. §§ 3553(d)(3) and (d)(4)(A) under the Administrative Procedure Act (APA) standards of review in bid protests.  28 U.S.C. § 1491(b)(4).  Those standards, incorporated by reference, provide that:

> [A] reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be---[¶] (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [¶] (B) contrary to constitutional right, power, privilege, or immunity; [¶] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [¶] (D) without observance of procedure required by law; [¶] (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or [¶] (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (2018). The ADRA authorizes "any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

Under CICA, federal agencies "may not authorize performance of the contract to begin while the protest is pending" before the GAO if "the Federal agency awarding the contract receives notice of a protest" during "the period beginning on the date of the contract award and ending . . . 10 days after the date of the contract award. 31 U.S.C. § 3553(d)(3)(A)(i), (4)(A)(i)–(ii) (2018). If performance was already authorized, "the contracting officer shall immediately direct the contractor to cease performance under the contract." *Id.* § 3553(d)(3)(A)(ii). A stay, thus, is legally mandated while a timely protest is pending.

Equitable tolling "effectively extends an otherwise discrete limitations period set by Congress" when a litigant "has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). As a general rule, "[o]nce Congress has made such a waiver" of sovereign immunity "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990); *see also Young v. United States*, 535 U.S. 43, 49–50 (2002). The Supreme Court has created a multi-factor test to determine if a statute impliedly precludes equitable tolling. *See United States v. Brockamp*, 519 U.S. 347, 350–52 (1997); *see also Holland v. Florida*, 560 U.S. 631, 646–48 (2010) (applying the *Brockamp* factors). These factors analyze "the statute's detail, its technical language, its multiple iteration of the limitations period, its explicit inclusion of exceptions, and its underlying subject matter." *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1342 (Fed. Cir. 2011) (en banc) (citing *Brockamp*, 519 U.S. at 350–52); *see also Kirkendall v. Dep't of Army*, 479 F.3d 830, 836–37 (Fed. Cir. 2007) (en banc).

### B. Analysis

Under CICA, unless a written override is issued, a CO must stay contract performance when he receives notice from the GAO, within ten days of the award, that a protest has been filed. 31 U.S.C. § 3553(d)(3)–(4). The contract award under the San Diego call order was made on August 15, and thus the ten-day period to qualify for the automatic stay ended on August 25.[1] Starside's GAO protest was not filed until September 9, and it appears that the CO received notice of the protest that same day. *See* Miller Decl. ¶ 25.[2] This is fifteen days too late for purposes of the automatic stay---unless the ten-day period is subject to equitable tolling and such tolling is warranted under the circumstances.

#### *1. Can the Ten-Day CICA Stay Period be Equitably Tolled?*

Since the Supreme Court's 1990 decision in *Irwin*, federal courts have followed a rebuttable presumption that deadlines concerning disputes with the federal government may be equitably tolled. *See* 498 U.S. at 95–96. Tollable time periods are not limited to statutes of limitations for court filings, and can include those relating to administrative or agency filings. *See, e.g., United States v. Kwai Fun Wong*, 575 U.S. 402, 420 (2015) (holding that the two-year presentment period under the Federal Torts Claims Act, 28 U.S.C. § 2401(b), may be equitably tolled); *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 798–800 (Fed. Cir. 2009) (holding that the six-year presentment period under the Contract Disputes Act, 41 U.S.C. § 605(a), may be equitably tolled).[3] Thus, the fact that the deadline at issue concerned notice of a proceeding before the GAO, an independent tribunal, *see* 31 U.S.C. § 702(a), does not categorically place it beyond the reach of tolling principles. *Cf. Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 156–61 (2013) (holding that statutory deadline for internal agency appeal, subject to a regulatory exception under rulemaking authority, could not be equitably tolled).

---

[1] Because the procurement was conducted under subpart 8.4 of the Federal Acquisition Regulation (FAR), the required debriefing provision (48 C.F.R. § 15.506) did not apply, *see* Ex. 1 to Pl.'s Mem. at 20, and the alternative deadline of five days after debriefing was not triggered, *see* 31 U.S.C. § 3553(d)(4)(A)(ii).

[2] Under CICA, the GAO is required to notify the CO of a protest within one day of receiving it. 31 U.S.C. § 3553(b)(1).

[3] Although the Supreme Court ultimately determined, in an unrelated case, that the circumstances presented in *Arctic Slope* did not warrant tolling, this decision did not disturb the conclusion that the presentment period was subject to equitable tolling. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256–59 (2016).

But while equitable tolling is presumed available for statutory time limits, "Congress, of course, may provide otherwise if it wishes to do so." *Irwin*, 498 U.S. at 96.  The Supreme Court subsequently framed the key question as: "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" *Brockamp*, 519 U.S. at 350.  The Federal Circuit has explained that this exercise requires "a clear contrary intent of Congress." *Bailey v. West*, 160 F.3d 1360, 1368 (Fed. Cir. 1998) (en banc).  Congress did not include an express disavowal of equitable tolling in the CICA provision at issue.  *See* 31 U.S.C. § 3553.  Applying the factors identified in *Brockamp*, the Court concludes that no intent to preclude equitable tolling may be found in CICA, and thus the presumption that tolling applies to the ten-day period has not been properly rebutted.

Turning first to the question of the statute's detail, one consideration is whether the time limitation is expressed in an "unusually emphatic form." *Brockamp*, 519 U.S. at 350; *Holland*, 560 U.S. at 646 (quoting *Brockamp*).  But from the perspective of bid protesters, this language "is anything but emphatic." *Arctic Slope*, 83 F.3d at 799.  The ten-day period is used to trigger a mandate falling on contracting officers, who "may not authorize performance of the contract" and "shall immediately direct the contractor to cease performance."  31 U.S.C. § 3553(d)(3)(A)(i)–(ii).  The other subsections that refer to the ten-day period use more permissive language, saying that during the period contractors "may . . . begin performance," *id.* § 3553(d)(1), or a CO "may withhold an authorization to proceed with performance" upon certain written determinations, *id.* §3553(d)(2).  The statute does not contain language prohibiting a stay of performance in connection with protests filed after the ten-day period, and the period relates only to the automatic stay, not to the timeliness of GAO protests generally.

Next, section 3553(d)(4)(A) contains "fairly simple language [which] is not technical." *Kirkendall*, 479 F.3d at 841; *see also Arctic Slope*, 583 F.3d at 799 (describing "simple provision [which] does not contain technical language").  A notice receipt period which ends on "the date that is 10 days after the date of the contract award," 31 U.S.C. § 3553(d)(4)(A)(i), reads nothing like the complicated tax period found to be too detailed to permit the assumption of tolling in *Brockamp,* 519 U.S. at 350–51; *see also Kirkendall*, 479 F.3d at 841 (discussing statutory language considered in *Brockamp*  and in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)).  Moreover, while the timing provision is referenced three times in the statute, 31 U.S.C. §3553(d)(1), (2) & (3)(A), the time period language is not itself reiterated "several times in several different ways." *Brockamp*, 519 U.S. at 351; *see also Kirkendall*, 479 F.3d at 841 (noting "the timing provisions . . . are not repeated").

Another factor for consideration is whether the statute contains "explicit exceptions to its basic time limits," *Brockamp*, 519 U.S. at 351, which can be taken to exclude other exceptions, such as equitable tolling.  The only trigger for the automatic stay contained in the original version of CICA, enacted pre-*Irwin* in 1984,

was an agency's receipt of notice of a GAO protest "within 10 days of the date of contract award." 31 U.S.C. § 3553(d)(1) (1988). A decade later, and nearly four years after *Irwin* was issued, Congress substantially revised this provision. *See* 31 U.S.C. § 3553 (1994). In addition to shortening to one calendar day the period within which the GAO must notify an agency of a protest, *see id.* § 3553(b)(1), and expressly assigning duties and powers to contracting officers, including the ability to "withhold an authorization to proceed with performance of a contract" before a protest is filed, *id.* § 3553(d)(2), Congress amended the language for the time period in which notice of a protest will trigger the automatic stay, *id.* § 3553(d)(4). To accommodate the procurement policy of requiring post-award debriefings in certain circumstances, the automatic stay is now keyed off the later of ten days after contract award or "the date that is 5 days after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required." 31 U.S.C. § 3553(d)(4)(B).

Rather than an exception, the five-day period is essentially a second basis for an automatic stay, applying when bidders have been promised formal debriefing.[4] The Supreme Court has recognized a difference between provisions that toll a period and those which "*trigger* its running." *Holland*, 560 U.S. at 647. The deadline based on debriefing "must be understood in context," and its context "signal[s] a beneficent Congressional act, not a rebuttal of the *Irwin* presumption." *Cloer*, 654 F.3d at 1343. No express exceptions to either of these deadlines are identified, nor is there any language indicating that exceptions are forbidden. This revision was made "after the decision in *Irwin*, and it is therefore reasonable to construe the statute in light of the general presumption set forth in *Irwin*." *Arctic Slope*, 583 F.3d at 798 (citation omitted).[5]

The final factor for consideration is "[t]he nature of the underlying subject matter" and whether there would be "serious administrative problems" in making individualized determinations, such as in the processing of millions of tax returns. *Brockamp*, 519 U.S. at 352; *see also Holland*, 560 U.S. at 646. But far from being problematic, individual procurement-specific issues are an express part of the CICA protest scheme---for instance, in the pre-protest stay of performance, which requires consideration of the likelihood of a protest and whether the best interests of the country are served by immediate performance, *see* 31 U.S.C. § 3553(d)(2)(A)–(B);

---

[4] In negotiated acquisitions under FAR part 15, an offeror is entitled to postaward debriefing if the agency receives a written request within three days of the offeror's *actual receipt of notification* of the contract award. 48 C.F.R. § 15.506(a)(1).

[5] Additionally, another consideration supporting the presumption of equitable tolling is that the ten-day period "is extraordinarily short." *Kirkendall*, 479 F.3d at 841 (describing a fifteen-day period).

and in the automatic stay overrides, based on the country's best interests or the presence of urgent and compelling circumstances, *id.* § 3553(c)(2)(A), (d)(3)(C)(i).

Without question, the ten-day period triggering the CICA automatic stay of contract performance is on the order of a claims-processing rule rather than a jurisdictional rule. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435, 438 (2011). It only pertains to an obligation of the contracting officer and has no bearing on the jurisdiction of the GAO, much less this court. As explained above, this provision is not at all emphatic regarding bid protesters; is simply phrased, not technical or complicated; is not reiterated; contains no express exceptions; and is part of a scheme that employs individualized determinations. Moreover, the incentive the automatic stay provides offerors to promptly submit GAO protests is hardly undermined when circumstances warranting equitable tolling delay their submissions. For these reasons, the Court holds that the ten-day receipt of notice period triggering the CICA automatic stay, 31 U.S.C. § 3553(d)(3)(A)(i), (4)(A)(i), is subject to equitable tolling. *See Irwin*, 498 U.S. at 95–96; *Arctic Slope*, 583 F.3d at 798–800; *Kirkendall*, 479 F.3d at 837–42.

### *2. Is Equitable Tolling Warranted under the Circumstances?*

Having found that the ten-day period for triggering the CICA stay can be equitably tolled, the Court now considers whether tolling is warranted by Starside's circumstances. To be entitled to equitable tolling, a party must "establish[] two elements: '(1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland*, 560 U.S. at 649). The first prong "covers those affairs within the litigant's control," and the second "by contrast, is meant to cover matters outside its control." *Id.* at 257; *see also K-Con Bldg. Sys., Inc. v. United States*, 131 Fed. Cl. 275, 317 n.36 (2017) (discussing *Menominee Indian Tribe*). Equitable tolling has been found warranted when a delay is "attributable, at least in part, to misleading governmental action," *Frazer v. United States*, 288 F.3d 1347, 1354 (Fed. Cir. 2002) (citing *Bailey*, 160 F.3d at 1365), even when "there is no suggestion of misconduct, such as tricking" the late filer, *Bailey*, 160 F.3d at 1365.[6]

To recap the relevant facts: On August 15, the GSA intended to notify Starside, the only unsuccessful offeror, that the contract for the San Diego call order was awarded to another offeror that same day. *See* Miller Decl. ¶¶ 15–17. Starside did not receive this notice and on August 19, informed Ms. Goines, the CO identified in the call order, that it had yet to hear of an award. 1st Coventry Decl. ¶ 23. She

---

[6] Although the Federal Circuit subsequently overruled *Bailey* on the ground that the statute at issue was jurisdictional and thus not subject to equitable tolling, *see Henderson v. Shinseki*, 589 F.3d 1201 (Fed. Cir. 2009), the Supreme Court reversed this decision, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011).

responded that the company *would receive notice* once the contract is awarded. *Id.* Mister Miller, the CO who had already replaced Ms. Goines, was unable to upload information concerning the award to the publicly accessible FPDS site until August 26. Miller Decl. ¶¶ 19–20. After being informed of awards under four other call orders, on September 3, Starside conducted a search which found the award information at the FPDS site, and contrary information at the GSA site. 1st Coventry Decl. ¶¶ 24–25. It immediately sent an email to Ms. Goines asking if an award had been made. *Id.* ¶ 26. On September 5, it received a response from Mr. Miller, confirming the award with a brief explanation. Miller Decl. ¶ 23; 1st Coventry Decl. ¶ 27. On September 9, Starside filed its protest with the GAO, and the latter notified Mr. Miller that same day. 1st Coventry Decl. ¶ 28; Miller Decl. ¶¶ 24–25.

These facts show that Starside pursued its rights diligently. After receiving via the ITSS system an email notice of an award under a subsequent call order, *see* Compl. ¶ 20; Ex. 1 to Pl.'s Reply, ECF No. 18 at 23, its officers contacted GSA on their own to ask about the San Diego call order. Having been told by the person identified as the CO for the San Diego procurement that the government would notify it when an award is made, plaintiff reasonably waited two weeks for this notice. Receipt of award notices under three subsequent call orders prompted Starside to search for information regarding the San Diego call order, and upon finding the FPDS information the offeror immediately sent an inquiry to Ms. Goines. The GAO protest was filed just four days after Starside received direct notice from the new CO, Mr. Miller, that the contract had been awarded. The diligence associated with such a filing is evident from CICA itself, as the automatic stay would have been triggered on this timeline had there been a required debriefing. *See* 31 U.S.C. § 3553(d)(4)(A)(ii) (employing a five-day period from debriefing date).

Starside has also established that extraordinary circumstances, beyond its control, prevented it from filing a protest by August 25. Its problem went beyond the seeming failure of the ITSS system to properly deliver the email notice of award on August 15. This obstacle should have been removed when Starside fortuitously contacted Ms. Goines just four days later and told her it had yet to receive notice of an award. As the award was already made, a correct response would have been to inform Starside of this, with plenty of time remaining for a timely protest for automatic stay purposes. If Ms. Goines was unaware of the award, and unwilling to look up the status of the call order, she could have informed Starside that she was no longer the CO for the procurement, and provided Mr. Miller's contact information. Instead, she merely told plaintiff that it would receive notice once an award was made, which was misleading in this context. Starside reasonably relied on this assurance, from the person identified as the CO, that it would receive notice of any award, and was not expected to presume bad faith or irregularity in the

conduct of the procurement. *See Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 757–69 (2005) (discussing presumptions of good faith conduct and regularity).

For purposes of equitable tolling, it matters not that there is no evidence, or even suggestion, that anyone at GSA intended to trick or mislead Starside. *See Bailey*, 160 F.3d at 1362, 1365 (applying equitable tolling when federal benefits officer mistakenly failed to file veteran's appeal). By misleading Starside into believing that no award had yet been made, when the clock for automatic stay purposes had begun to run four days earlier, a GSA official made it impossible for Starside to file its bid protest at that time and elevated the matter far beyond "a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96; *see Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959) (holding that equitable tolling could apply when party "was justifiably misled into a good-faith belief that" limitations period was four years longer than the law provided).[7] Indeed, there was nothing that Starside could have done to learn that an award had already been made until the award information was uploaded to the FPDS site---and this was after the ten-day period had expired. *See* Miller Decl. ¶ 20.

In any event, it was not reasonable under the circumstances to expect Starside to search the internet for information about the award, when the individual identified as the CO told the offeror it would receive notice from the government, and where the call order specifically stated "[q]uotes will only be received and awarded via ITSS." Ex. 1 to Pl.'s Mem. at 23. After Starside put GSA on notice that it had not received award notification, GSA's promise to inform Starside cannot be satisfied constructively by the FPDS posting.[8] The ten-day period for the automatic stay was tolled on August 19, when Starside was misled into believing an award had not yet been made, and did not resume running until September 5, when Starside finally received notice from GSA of the San Diego award. Starside's GAO protest was filed four days later, which counts as only the eighth day after the August 15 contract award due to the application of equitable tolling. The GAO is required by CICA to provide notice to the agency within one day of the protest, 31 U.S.C. § 3553(b)(1), and in this case appears to have provided notice the day of filing, *see* Miller Decl. ¶¶ 24–25.

---

[7] As this case involved a representation by a CO from the federal agency responsible for the award and the notification, it is distinguishable from *Former Employees of Sonoco Prods. Co. v. Chao*, 372 F.3d 1291, 1299 (Fed. Cir. 2004), where *state* unemployment office employees failed to inform the plaintiff how she could find published notice of a *U.S.* Department of Labor determination.

[8] The purpose of FPDS is to gather contract information for reports and statistics, not to inform offerors if they have been awarded contracts. *See* 48 C.F.R. § 4.602.

Thus, the Court found that GSA received notice of Starside's GAO protest concerning Call Order ID07190048 within 10 days of contract award, entitling Starside to the automatic stay under 31 U.S.C. § 3553(d)(3)(A)–(d)(4).  *See* Order, ECF No. 22. [9]  The stay of contract performance is imposed by the statute itself and requires no injunction to be issued from this court, as "Congress decided that the injunctive relief factors need not be invoked when a bid protest is timely filed with the GAO, instead requiring that contract performance be stayed automatically." *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 397 (2013) (citation omitted); *see also Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005).[10]  To the extent that Starside has moved for a declaratory judgment that the CICA stay of contract performance applied to this procurement, the motion is **GRANTED**, and its requests for injunctive or other equitable relief are **DENIED** as **MOOT**.[11]

### III. CONCLUSION

For the foregoing reasons, the Court concludes that notice of Starside's GAO protest concerning Call Order ID07190048 was received by GSA within ten days of contract award due to the application of equitable tolling, and thus plaintiff was entitled to an automatic stay of performance of the protested contract under CICA, 31 U.S.C. § 3553(d)(3)(A)–(d)(4).  Plaintiff's Application for a Temporary Restraining Order, Motion for a Preliminary Injunction, and Declaratory Relief, ECF No. 5, is thus **GRANTED-IN-PART** and **DENIED-IN-PART**.  Starside's motion for a declaratory judgment that the automatic stay applied is **GRANTED**, and its motion in all other respects is **DENIED** as **MOOT**.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Victor J. Wolski<br>
**VICTOR J. WOLSKI**<br>
Senior Judge

---

[9]  The Court notes that Starside would have qualified for the automatic stay even if the time period resumed running on September 3, when it first discovered the FPDS information, as notice would have been received by GSA on day ten after award.

[10]  The automatic stay by the very terms of CICA does not preclude the agency from issuing a proper override, *see* 31 U.S.C. § 3553(d)(3)(C), nor does it compel the agency to extend the incumbent contract to provide services during a protest.

[11]  Because the Court determined that the automatic stay was triggered due to the operation of equitable tolling, the alternative grounds for relief advanced by Starside are moot.